**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION**

| | |
|---|---|
| PENN, LLC, d/b/a PULSETV.COM, | CASE NO. 2:22-cv-6760-SDW-ESK |
| *Plaintiff*, | CIVIL ACTION |
| v. | **DEFENDANT FREESTYLE SOFTWARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| FREESTYLE SOFTWARE INC., f/k/a DYDACOMP DEVELOPMENT CORP., INC., | |
| *Defendant*. | |

**DEFENDANT FREESTYLE SOFTWARE, INC.'S
<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Submitted by:

Torsten M. Kracht
Email: tkracht@HuntonAK.com
John J. Delionado (*pro hac vice*)
Email: jdelionado@HuntonAK.com
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave, NW, Suite 900
Washington, DC 20037-1701
Telephone (202) 955-1500
Facsimile (202) 778-2201

Jason M. Beach (*pro hac vice*)
Email: jbeach@HuntonAK.com
HUNTON ANDREWS KURTH LLP
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
Telephone: (404) 888-4219
Facsimile: (404) 888-4190

***Counsel for Defendant Freestyle Software, Inc.***

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT .....................................................................................................................1

    A.    Plaintiff cannot withdraw half its Complaint "without prejudice" via response brief. .....................................................................................................................1

    B.    Plaintiff does not state a claim for breach of contract (Count III) ..........................1

    C.    The breach of implied contract claim fails (Count IV) ...........................................3

    D.    Negligent misrepresentation/fraudulent inducement claims fail (Count VI)...........5

        1.    The alleged pre-contract statements do not state a claim ............................5

        2.    Plaintiff pleads no plausible facts to support Freestyle's knowledge of falsity at the relevant time ..........................................................................6

    E.    Plaintiff fails to state a claim for negligence or gross negligence (Count II) .........7

        1.    No claim for simple negligence ..................................................................7

        2.    Insufficient pleaded facts to support gross negligence ...............................9

    F.    Plaintiff fails to state a CFA claim (Count VII)....................................................10

        1.    Insufficient facts alleged to support a non-NJ Plaintiff bringing a CFA claim.........................................................................................................10

        2.    Insufficient facts to show Freestyle's services are CFA "merchandise" ...11

        3.    Insufficient facts to show an "unlawful practice" for three reasons ..........13

            (a)    CFA "affirmative act" not pleaded with Rule 9(b) particularity ...13

            (b)    Breach of purported contractual duty is not CFA "unlawful" .......13

            (c)    Insufficient and implausible facts for CFA concealment claim.....14

    G.    Punitive damages cannot be an independent "claim" and are otherwise waived ...................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*18 KT.TV, LLC v. Entest Biomed., Inc.*,
    No. 3:11CV244, 2011 WL 5374515 (M.D. Pa. Nov. 7, 2011)...................................................3

*Achieve 24 Fitness Ltd. Liab. Co. v. Alloy Pers. Training Sols.*,
    LLC, No. CV 21-12085 (GC), 2023 WL 2264129 (D.N.J. Feb. 28, 2023)............................12

*Aldossari on Behalf of Aldossari v. Ripp*,
    49 F.4th 236 (3d Cir. 2022) ....................................................................................................12

*Alexander v. CIGNA Corp.*,
    991 F. Supp. 427 (D.N.J. 1998) ................................................................................................6

*All the Way Towing, LLC v. Bucks Cty. Int'l, Inc.*,
    236 N.J. 431 (2019) ................................................................................................................11

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
    No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...........................................8

*Anderson v. Modica*,
    4 N.J. 383, 73 A.2d 49 (1950)...................................................................................................6

*Baer v. Chase*,
    392 F.3d 609 (3d Cir. 2004)..................................................................................................3, 4

*Bhatt v. Comm'r of NJDOL*,
    No. 3:16-CV-5654-BRM-DEA, 2018 WL 623667 (D.N.J. Jan. 30, 2018)............................15

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
    567 F. Supp. 3d 667 (D.S.C. 2021)........................................................................................10

*Boyes v. Greenwich Boat Works, Inc.*,
    27 F. Supp. 2d 543 (D.N.J. 1998) ..........................................................................................10

*Broward Hosp. Dist. v. MedQuist Inc.*,
    516 F. Supp. 2d 370 (D.N.J. 2007) ..........................................................................................5

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
    238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................................................................................8

*Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*,
    No. CV 2:14-3362, 2018 WL 585541 (D.N.J. Jan. 29, 2018) ..................................................1

*Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*,
    195 N.J. 231, 948 A.2d 1285 (2008)........................................................5

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*,
    349 F.3d 376 (7th Cir.2003) .................................................................11

*Ctr. for Orthopedics & Sports Med. v. Horizon*,
    Civil No. 13-1963 (KSH-CLW), 2015 WL 5770385 (D.N.J. Sept. 30, 2015) ........................1

*D'Agostino v. Maldonado*,
    216 N.J. 168 (2013) .............................................................................13

*Dandana, LLC v. MBC FZ-LLC*,
    No. CIV. 08-5592 DRD, 2011 WL 5412952 (D.N.J. Nov. 7, 2011).........................3

*Dickerson v. Colonial Pipeline Co.*,
    No. 1:21-CV-2098-MHC, 2022 WL 18717801 (N.D. Ga. June 17, 2022) ...............8

*Dicuio v. Brother Int'l Corp.*,
    No. CIV.A. 11-1447 FLW T, 2015 WL 3403144 (D.N.J. May 27, 2015) .............10, 11

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.*,
    No. 15-CV-02129-MSK-NYW, 2016 WL 8578096 (D. Colo. June 20, 2016)..............14

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019)......................................................8

*Fabbro v. DRX Urgent Care, LLC*,
    616 F. App'x 485 (3d Cir. 2015) ...........................................................2

*Ferrante v. Amgen, Inc.*,
    Civ. No. 13-07344, 2014 WL 1092555 (D.N.J. Mar. 18, 2014)..........................1

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)..................................................................12

*G&S Beshay Trading Co., LLC v. 7-Eleven, Inc.*,
    No. CV183909ESJAD, 2018 WL 10602188 (D.N.J. Dec. 18, 2018) ....................2

*Glauberzon v. Pella Corp.*,
    No. 10-5929, 2011 WL 1337509 (D.N.J. Apr. 7, 2011)..................................13

*GMFS LLC v. Cenlar FSB*,
    No. CV 18-00582-BAJ-RLB, 2020 WL 9602039 (M.D. La. June 4, 2020) ............12

*Int'l Minerals & Mining Corp. v. Citicorp N. Am., Inc.*,
    736 F. Supp. 587 (D.N.J. 1990) ............................................................7

*Jablonski v. Pan Am. World Airways, Inc.*,
   863 F.2d 289 (3d Cir.1988)...................................................................................15

*Jewish Ctr. of Sussex County v. Whale*,
   86 N.J. 619 (1981) ..................................................................................................6

*Johnson v. SmithKline Beecham Corp.*,
   724 F.3d 337 (3d Cir. 2013)....................................................................................1

*Johnson v. Wynn's Extended Care, Inc.*,
   No. CIV. 12CV00079RMBKMW, 2014 WL 5292318 (D.N.J. Oct. 15, 2014) .....................15

*Jones v. Francis*,
   No. CIV.A. 13-04562 SRC, 2013 WL 5603848 (D.N.J. Oct. 11, 2013) ...........................15

*Judge v. Blackfin Yacht Corp.*,
   357 N.J. Super. 418 (App. Div. 2003) ...................................................................14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)...............................................................................................11

*Knox v. Samsung Elecs. Am., Inc.*,
   No. CIV.A. 08-4308JLL, 2009 WL 1810728 (D.N.J. June 25, 2009)...................10

*Kronfeld v. First Jersey Nat'l Bank*,
   638 F. Supp. 1454 (D.N.J. 1986) ............................................................................5

*Kruzits v. Okuma Mach. Tool, Inc.*,
   40 F.3d 52 (3d Cir. 1994) .....................................................................................11

*Leisure Pass N. Am., LLC v. Leisure Pass Group, Ltd.*,
   Civ. No. 12-3375, 2013 WL 4517841 (D.N.J. Aug. 26, 2013) ................................1

*Lincoln Nat'l Life Ins. Co. v. Ret. Value LLC*,
   No. CV2120438MASLHG, 2022 WL 17554986 (D.N.J. Dec. 9, 2022)..................7

*Livingstone v. Hugo Boss Store, Atl. City, NJ*,
   No. CV2101971, 2021 WL 3910149 (D.N.J. Sept. 1, 2021)....................................9

*Lockhart v. Dorrance Publ'g Co., Inc.*,
   No. CV 22-02929(FLW), 2023 WL 157323 (D.N.J. Jan. 11, 2023) ......................13

*Mango v. Pierce-Coombs*,
   370 N.J. Super. 239, 851 A.2d 62 (App. Div. 2004) ..............................................7

*Murray v. ILG Techs., LLC*,
   798 Fed. Appx. 486 (11th Cir. 2020)......................................................................8

*N.J. Manufacturers Ins. Grp. v. Vivint Solar, Inc.*,
No. 16-CV-4184 (PGS), 2018 WL 1003745 (D.N.J. Feb. 20, 2018) ......................................4

*Otto v. Williams*,
No. CV 15-3217, 2016 WL 3136923 (E.D. Pa. June 6, 2016) ...................................................1

*Papergraphics Int'l, Inc. v. Correa*,
389 N.J. Super. 8 (App. Div. 2006) ..........................................................................................5

*Piccinetti v. Clayton, Myrick, McClanahan & Coulter, PLLC*,
No. CV164032MASTJB, 2017 WL 3879085 (D.N.J. Sept. 5, 2017) ......................................3

*Powell v. Seton Hall Univ.*,
No. 221CV13709WJMJSA, 2022 WL 1224959 (D.N.J. Apr. 26, 2022) ................................9

*Rait v. Sears, Roebuck and Co.*,
No. 08–2461, 2009 WL 250309 (D.N.J. Feb. 3, 2009) ..........................................................13

*Redland Soccer Club, Inc. v. Dep't of Army of U.S.*,
55 F.3d 827 (3d Cir. 1995) ......................................................................................................15

*Ribble Co., Inc v. Burkert Fluid Control Sys.*,
No. CV 15-6173, 2016 WL 6886869 (D.N.J. Nov. 22, 2016) .................................................6

*Roselle Park Bldg. & Loan Ass'n v. Friedlander*,
116 N.J.L. 32 (1935) ................................................................................................................3

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*,
No. CV 07-2762 JAP, 2011 WL 4352375 (D.N.J. Sept. 15, 2011)..........................................2

*Shinn v. Champion Mortg. Co.*,
No. CIVA 09-CV-00013WJM, 2010 WL 500410 (D.N.J. Feb. 5, 2010)............................4, 5

*Skypala v. MERS, Inc.*,
655 F. Supp. 2d 451 (D.N.J. 2009) ..........................................................................................2

*Smith v. Covidien LP*,
No. 119CV11981NLHAMD, 2019 WL 7374793 (D.N.J. Dec. 31, 2019)..............................15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014).......................................................................................8

*Spec's Fam. Partners, Ltd. v. First Data Merch. Servs. LLC*,
777 F. App'x 785 (6th Cir. 2019) .........................................................................................2, 3

*Staff4Jobs, LLC v. List Logistics, LLC*,
No. 318CV13399BRMLHG, 2019 WL 2635997 (D.N.J. June 27, 2019) ...............................1

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
    941 F. Supp. 2d 537 (D.N.J. 2013) .................................................................................11

*In re Subaru Battery Drain Prod. Liab. Litig.*,
    No. 1:20-CV-03095-JHR-JS, 2021 WL 1207791 (D.N.J. Mar. 31, 2021) ...........................14

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ...........................................................................................6

*Synnex Corp. v. ADT Sec. Servs., Inc.*,
    394 N.J. Super. 577 (App. Div. 2007) ............................................................................5

*Tiger Supplies Inc. v. MAV Assocs. LLC*,
    No. CV 20-15566 (SRC), 2022 WL 1830796 (D.N.J. June 3, 2022) ...................................7

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 F. App'x 82 (3d Cir. 2015) ......................................................................................5

*Wildstein v. Tru Motors, Inc.*,
    227 N.J. Super. 331, 547 A.2d 340 (Law. Div. 1988) ......................................................15

*Willekes v. Serengeti Trading Co.*,
    No. CV137498ESMAH, 2016 WL 5334522 (D.N.J. Sept. 22, 2016) ...................................8

**Statutes**

N.J.S.A. § 56:8-2 ..............................................................................................................13

N.J.S.A. § 56:8-163 ............................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure Rule 9 ...................................................................5, 6, 13

Federal Rule of Civil Procedure Rule 12 ..................................................................14

Federal Rule of Civil Procedure Rule 15 ...................................................................1

## ARGUMENT

### A.   Plaintiff cannot withdraw half its Complaint "without prejudice" via response brief.

Plaintiff disagrees it filed a shotgun complaint, yet claims to withdraw half its Complaint "without prejudice."  Resp. 11-12.  To "withdraw particular claims without prejudice[,]" Plaintiff "must amend the complaint" under Rule 15, which it failed to do.  *Ctr. for Orthopedics & Sports Med. v. Horizon*, No. 13-1963, 2015 WL 5770385 at *2 (D.N.J. Sept. 30, 2015).  And even if the Court construes Plaintiff's purported withdrawals as a proper Rule 15 motion, it nevertheless should dismiss the claims with prejudice.  *Otto v. Williams*, No. CV 15-3217, 2016 WL 3136923, at *4 (E.D. Pa. June 6, 2016) (claims purportedly withdrawn without prejudice in response brief still analyzed to determine if they were "plausible and cognizable.")  As explained in Freestyle's opening motion to dismiss, these claims lack merit, so there is no need to preserve them.  *Id.* (dismissing claims with prejudice purportedly withdrawn without prejudice via response brief).[1]  Alternatively, because Plaintiff does not respond to the substance of Freestyle's arguments, the claims can be considered abandoned and dismissed with prejudice.[2]

### B.   Plaintiff does not state a claim for breach of contract (Count III)

Plaintiff admits that it fails to identify any specific contract provision that has been

---

[1] Despite Plaintiff's argument to the contrary (Resp. at 3), Plaintiff has not properly alleged federal subject-matter jurisdiction based on diversity of citizenship, which this Court may assess at any time.  This is because Plaintiff alleges it is a limited liability company, and "the citizenship of a limited liability company is determined by the citizenship of each of its members."  *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013).  The Complaint has no such allegations, and Plaintiff at least must allege none of its members is a Delaware or New Jersey citizen (which are the states where Freestyle was incorporated and has its principal place of business, respectively).  *Compare id.*, *with* Compl. ¶ 10.  To the extent diversity jurisdiction does not exist, Plaintiff's withdrawal of all federal claims (or the Court's dismissal of the same) would eliminate any federal question from the case, in which case Freestyle requests that the Court retain supplemental jurisdiction over the state law claims.

[2] *Staff4Jobs, LLC v. List Logistics, LLC*, No. 318CV13399BRMLHG, 2019 WL 2635997, at *4 (D.N.J. June 27, 2019) (dismissing abandoned claims with prejudice); *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, No. CV 2:14-3362, 2018 WL 585541, at *4 (D.N.J. Jan. 29, 2018) (same); *Ferrante v. Amgen, Inc.*, Civ. No. 13-07344, 2014 WL 1092555, at *7 (D.N.J. Mar. 18, 2014) ("Courts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed."); *Leisure Pass N. Am., LLC v. Leisure Pass Group, Ltd.*, Civ. No. 12-3375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it.").

purportedly breached, which Freestyle's cited authority states supports dismissal.[3]  Plaintiff did

not address these cases.  As Freestyle explained previously, Plaintiff's entire contract breach

allegations are bound up in Freestyle's purported PCI non-compliance.  But Plaintiff concedes

that "[t]he Freestyle contract does not mention PCI compliance."  Compl. ¶ 45.  Plaintiff seeks to

cure this problem by having the Court "read into the contract" a new provision that Freestyle

guarantees the information security of Plaintiff's customers' data via PCI compliance.  Resp. at

24.  Plaintiff cites one case to support this argument, *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*,

No. CV 07-2762 JAP, 2011 WL 4352375, at *4 (D.N.J. Sept. 15, 2011), but that case used New

York law to interpret an ambiguous contract term.  This Court is not resolving an ambiguity.

Rather, Plaintiff asks the Court to rewrite the contract to add an entirely new PCI compliance

provision.  This is a major conceptual flaw that presents itself in at least two additional ways.

 First, it is a false equivalence.  PCI compliance is not the same as being breach-proof.  It

does not guarantee security, and many companies that have been found PCI compliant

subsequently have been victimized by breaches.  Conversely, "a non-compliant merchant might

never suffer a data security breach." *Spec's Fam. Partners, Ltd. v. First Data Merch. Servs.*

*LLC*, 777 F. App'x 785, 789 (6th Cir. 2019).  Second, PCI compliance is not the "fundamental"

expectation that Plaintiffs claim for a payment processor.  In *Spec's Fam. Partners, Ltd.*, the

Sixth Circuit addressed a defendant payment processor's claim that PCI compliance was so

fundamental to its contract with the plaintiff merchant that a later PCI non-compliance was a

material breach that excused contractual performance.  The Sixth Circuit disagreed:

> While First Data reasonably expected Spec's Family's PCI DSS compliance under
> [the express language of] . . . the contract, . . . Spec's Family's non-compliance falls

---

[3] *Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485, 487 (3d Cir. 2015) (affirming dismissal); *G&S Beshay Trading Co., LLC v. 7-Eleven, Inc.*, No. CV183909ESJAD, 2018 WL 10602188, at *5 (D.N.J. Dec. 18, 2018) (dismissing contract claim); *Skypala v. MERS, Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (plaintiff "must identify the specific contract or provision" allegedly breached).

> short of "substantially defeat[ing] the contract's purpose," … Indeed, that the
> parties continued to perform after the attacks highlighted Spec's Family's
> compliance problems shows that First Data did not consider the problems "vital to
> the existence of the contract." PCI DSS compliance served as a promise peripheral
> to the central benefit First Data expected—payment for its processing services.

*Id.* Similarly, even if Freestyle were later determined to be PCI non-compliant, the parties

admittedly continued to perform. To this day Freestyle facilitates payment processing services

for Plaintiff. The Sixth Circuit also rejected the assertion, like Plaintiff's here, that extrinsic

evidence should be used to supply an absent contract term. *Id.*[4] This claim should be dismissed.

**C.    The breach of implied contract claim fails (Count IV)**

Freestyle advanced three implied contract dismissal arguments. Plaintiff did not respond

to—and thus concedes—two of those arguments: (1) that aspirational and vague website

statements do not create an implied contract and (2) that Plaintiff cannot claim to be an implied

and derivative third-party beneficiary to its own express, first-party contract. *Piccinetti v.*

*Clayton, Myrick, McClanahan & Coulter, PLLC*, No. CV164032MASTJB, 2017 WL 3879085,

at *4 (D.N.J. Sept. 5, 2017) (failing to respond to briefed argument implies concession). Instead,

Plaintiff only challenges the well-settled point that existence of an express contract generally

bars an implied contract claim. Plaintiff does not address the Third Circuit and New Jersey

authority Freestyle cited. *See Baer v. Chase*, 392 F.3d 609, 617 (3d Cir. 2004) (interpreting New

Jersey law and citing *Roselle Park Bldg. & Loan Ass'n v. Friedlander*, 116 N.J.L. 32 (1935)

("[I]t is axiomatic that a contract cannot arise by implication in fact where there is an express

contract between the parties relating to the same subject matter.")). Rather, Plaintiff cites a case

decided under Pennsylvania law to show the two claims are not mutually exclusive. *18 KT.TV,*

---

[4] This aligns with New Jersey Law. *E.g., Dandana, LLC v. MBC FZ-LLC*, No. CIV. 08-5592 DRD, 2011
WL 5412952, at *9 (D.N.J. Nov. 7, 2011) ("While New Jersey law permits . . . extrinsic evidence in determining the
intent and meaning of the contract, it cannot be used to vary the [written] terms of the agreement.") (cleaned up).

*LLC v. Entest Biomed., Inc.*, No. 3:11CV244, 2011 WL 5374515, at *5 (M.D. Pa. Nov. 7, 2011).

But when interpreting *Baer* and New Jersey law, this Court stated, "[T]he existence of an express

contract does not preclude the existence of an implied contract only if 'the implied contract is

distinct from the express contract.'"   *Shinn v. Champion Mortg. Co.*, No. CIVA 09-CV-

00013WJM, 2010 WL 500410, at *6 (D.N.J. Feb. 5, 2010) (quoting *Baer*, 392 F.3d at 617)).   In

other words, the "implied contract, if it is to be valid, must be *entirely unrelated to the express*

*contract*," *Baer*, 392 F.3d at 617 (emphasis added), which Plaintiff cannot do here.

   As an initial matter, Plaintiff's implied contract claim incorporates all the allegations of

its express contract claim, which fails to demonstrate that the two are unrelated.   Compl. ¶ 114.

Moreover, Freestyle's at-issue services include payment card transaction processing for

Plaintiff's customers.   Compl. (Ex. B).   Specifically referencing the use of Plaintiff's customers'

data in connection with Freestyle's services, Section 3.4 of the Subscription Services Schedule

also provides that Plaintiff, not Freestyle, is solely responsible for its customers' data (defined as

"Your Data" in the Subscription Services Schedule).   *See* Compl., Ex. B, Subscription Services

Schedule § 3.4.   Section 1, "Definitions," of the Subscription Services Schedule defines "Your

Data" as, "data, information or material provided or submitted or stored on Our Subscription

Services by You or any User in the course of using Our Service(s)."   *See* Compl., Ex. B,

Subscription Services Schedule § 1.   The relevant contracts also address liabilities, including

those for "loss of data."   *See generally id.*   Resp. at 33-35.   All the cases Plaintiff cites about

public policy were not business-to-business transactions.   Resp. at 33-34.[5]   The parties here are

sophisticated businesses that the facts show did negotiate the agreement.   MTD at 37-38.   The

rules regarding a "contract of adhesion are inapplicable where, as here, both parties are

---

   [5] *N.J. Manufacturers Ins. Grp. v. Vivint Solar, Inc.*, No. 16-CV-4184 (PGS), 2018 WL 1003745, at *5 (D.N.J. Feb. 20, 2018), for example involved an elderly couple who did not negotiate the agreement.

sophisticated commercial entities with equal bargaining power." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 246, 948 A.2d 1285 (2008).  *Synnex Corp. v. ADT Sec. Servs., Inc.*, 394 N.J. Super. 577, 591 (App. Div.2007) ("Synnex is a large corporation that could have negotiated for a contract without an exculpatory clause."); *Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 14 (App. Div. 2006) ("[T]he parties were experienced commercial entities of relatively equal bargaining power which engaged in negotiated contracts.").  These and other provisions do not support that the implied contract claim is entirely unrelated to the express contract.  It should be dismissed.  *Shinn*, 2010 WL 500410, at *6 (dismissing implied contract claim that "would have to cover the very same ground as the express contract").[6]

## D.    Negligent misrepresentation/fraudulent inducement claims fail (Count VI)

**First, the alleged pre-contract statements do not state a claim.**[7]  As an initial matter, Plaintiff does not dispute that post-contractual statements cannot form the basis of a misrepresentation claim.  Further, the identified pre-contractual statements fare no better.  For example, Plaintiff alleges that "Freestyle's President, falsely stated to PulseTV that Freestyle had a plan to become PCI DSS compliant in 2005."  Compl. ¶ 27.  But this is a representation of a

---

[6] Plaintiff also did not meaningfully respond to Freestyle's argument that there is no implied contract between it and Freestyle to notify Plaintiff's customers of the incident.  New Jersey law has a statutory obligation to notify *Plaintiff* of the incident (which Freestyle did), and then for Plaintiff to notify its own New Jersey customers. N.J.S.A. § 56:8-163(b) ("Any business or public entity that compiles or maintains computerized records that include personal information on behalf of another business . . . *shall notify that business* or public entity, *who shall notify its New Jersey customers* . . . following [the] discovery" that protected information "is reasonably believed to have been, accessed by an unauthorized person.") (emphasis added).  Plaintiff did not address this authority.

[7] Citing *Kronfeld v. First Jersey Nat. Bank*, 638 F. Supp. 1454 (D.N.J. 1986), Plaintiff claims that because the alleged fraudulent statements were numerous and took place over a long period, pleading specificity is relaxed. But *Kronfeld* relaxed the standard in a securities fraud claims case brought on behalf of 1,400 municipal bond purchasers where the complaint described nature and subject of representations at issue with some specificity, and stated dates of purchases, the buyer and seller, and specific amount of purchases, and specified which misrepresentations were made by individual defendants.  *See generally id.*  Plaintiff does not allege even those facts. Nor does this case involve facts "peculiarly within the defendant's knowledge or control" as was the case in *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 384 (D.N.J. 2007), which it also cites.  But even if the facts are sufficiently specific, they still fail to state a claim.  Also, negligence misrepresentation claims that sound in tort are subject to Rule 9(b).  *Compare* Resp. at 27, *with, e.g.*, *Travelers Indem. Co. v. Cephalon, Inc.*, 620 Fed. App'x 82, 86 (3d Cir. 2015) ("[I]ntentional and negligent misrepresentation . . . must be pled . . . under Rule 9(b).").

"future plan," rather than a present misstatement of material fact.  *See Anderson v. Modica*, 4

N.J. 383, 391–92, 73 A.2d 49 (1950) ("[F]raud must relate to a present or pre-existing fact" not

on "representations which involve things to be done in the future."); *see Jewish Ctr. of Sussex*

*Cty. V. Whale*, 86 N.J. 619, 624 (1981).[8]  Worse, Plaintiff is not suing under the parties' 2012

agreement at all, so statements made at the time of contracting *that agreement* have no bearing

on the parties' operative agreement entered in 2018.  *See* Compl. ¶ 39; *see also Alexander v.*

*CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998), *aff'd*, 172 F.3d 859 (3d Cir. 1998)

("Statements as to future … events, [or] expectations …, or as to what will . . . be done in the

future, do not constitute misrepresentations, even though they may turn out to be wrong.").

   <u>Second</u>, **Plaintiff pleads no plausible facts to support Freestyle's knowledge of falsity**

**at the relevant time.**  Even if the Court disagrees with these prior points, the fraud claim still

fails.  Plaintiff argues that Freestyle "certainly knew or should have known" (Resp. at 29) that its

security was inadequate.  This is insufficient.  *See In re Suprema Specialties, Inc. Sec. Litig.*, 438

F.3d 256, 282 (3d Cir. 2006) ("[P]leading of scienter sufficient to satisfy Rule 9(b) may not rest

on a bare inference that a defendant 'must have had' knowledge of the facts or 'must have

known' of the fraud given his or her position in the company.").  And what Freestyle allegedly

knew *after* the incident cannot support an inducement claim because it would be logically

anachronistic.  *Ribble Co., Inc v. Burkert Fluid Control Sys.*, No. CV 15-6173, 2016 WL

6886869, at *3 (D.N.J. Nov. 22, 2016) (stating that when alleged statements were made "after

the Agreement was executed," that they "clearly did not induce Plaintiff to enter into the contract

itself.").  Plaintiff alerted Freestyle in early 2022 that the incident potentially arose in Freestyle's

systems (*see* Compl. ¶¶ 55, and 144(b)), and Freestyle indeed believed it was PCI-compliant

---

[8] The same argument holds true for Freestyle's alleged representation "at or around the time of the 2012 agreement" that "Freestyle had a plan to maintain PCI compliance."  Compl. ¶ 36.

before and during the incident because it had been independently certified as such.  *Mango v.*

*Pierce-Coombs*, 370 N.J. Super. 239, 253, 851 A.2d 62, 71 (App. Div. 2004) (defendant did not

know or believe statement was false "[e]ven if the statement proved, in the future, to be false, . . .

[in the absence of] evidence of [defendant's] knowledge of its falsity.").[9]  And Plaintiff's paid-

for PFI report postdates the operative contracts by many years.[10]

**E.      Plaintiff fails to state a claim for negligence or gross negligence (Count II)**

      **No claim for simple negligence.**  Plaintiff fails to address Freestyle's argument that the

PCI Standard does not create a New Jersey tort duty.  Nor does Plaintiff address Freestyle's

argument that it had no tort duty to notify Plaintiff's customers of the incident.  These arguments

thus are conceded.  Plaintiff instead addresses Freestyle's simple negligence arguments in three

short paragraphs.  The first two merely restate the Complaint's allegations without addressing

Freestyle's arguments as to why those allegations are insufficient.  The third paragraph ignores

the cases[11] supporting that Freestyle did not owe Plaintiff a tort duty to safeguard Plaintiff's

customers' data.  Resp. at 31.  To this end, Plaintiff did not address its admission that the "duty"

asserted in its negligence claim arose "from sources such as contracts,"  Compl. ¶ 101, or that no

New Jersey data breach case has recognized such a business-to-business duty outside the parties'

contract.  Nor has Plaintiff pleaded any facts that would support imposing such a new duty under

---

[9] Plaintiff also is incorrect that it has correctly stated a negligent misrepresentation claim.  Freestyle's PCI compliance AOCs show than any representations of its PCI Compliance were not "demonstrably false"  *Lincoln Nat'l Life Ins. Co. v. Ret. Value LLC*, No. CV2120438MASLHG, 2022 WL 17554986, at *8 (D.N.J. Dec. 9, 2022) (dismissing claim that was not "demonstrably false" when made).

[10] Freestyle also objects to the Shavrah Declaration and its attachments, attached to Plaintiff's Response. The complaint may not be amended by the briefs in opposition to a motion to dismiss.  *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).

[11] *Int'l Minerals & Mining Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990) ("Where a party does not owe another a duty of care absent the existence of a contract, a separate duty of care cannot arise simply by virtue of the existence of the contract."); *Tiger Supplies Inc. v. MAV Assocs. LLC*, No. CV 20-15566 (SRC), 2022 WL 1830796, at *10 (D.N.J. June 3, 2022) (no duty apart from contractual between two businesses even though "Plaintiff emphasizes that it entrusted Defendants with its confidential information and relied on them to act as a liaison.").

New Jersey law in a business-to-business transaction such as this. *Cf. Willekes v. Serengeti Trading Co.*, No. CV137498ESMAH, 2016 WL 5334522, at \*15 (D.N.J. Sept. 22, 2016) (weighing factors and finding no duty).

Rather than tackle this authority, Plaintiff cites three inapposite cases.[12]  None involved a business-to-business dispute.  *Brush* was a putative class action brought by plaintiff-patients decided under Florida law that found (under Eleventh Circuit precedent) that a healthcare provider owed its patients a duty to protect their sensitive information, including healthcare information.  238 F. Supp. 3d at 1366.  *Brush* also did not address the New Jersey authority (or any applicable Florida analogs) discussed in *Int'l Minerals & Mining Corp.* or *Tiger Supplies Inc.*  Nor does *In re Am. Med. Collection Agency* carry the day.  It was likewise brought by plaintiff-patients (this time under New Jersey law).  But that case's abbreviated duty discussion relied only on *Brush* (which is unpersuasive as discussed above) and *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019).  *In re Equifax's* duty finding has been repudiated by the Supreme Court of Georgia and the Eleventh Circuit, both of which questioned the existence of an independent duty to safeguard data in Georgia.  *Murray v. ILG Techs., LLC*, 798 F. App'x 486, 492 (11th Cir. 2020) (analyzing issue).[13]

*In re Sony* involved a putative consumer class action (analyzed under California and Massachusetts law) that cursorily found a <u>tort</u> duty when "neither party provided the Court with case law to support or reject the existence of a legal duty to safeguard a consumer's confidential information entrusted to a commercial entity."  362 F. Supp. 3d at 1321.  It is not persuasive on

---

[12] Plaintiff cites:  (1) *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017); (2) *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021); and (3) *In re Sony Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014), corrected at No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014).
[13] *See also Dickerson v. Colonial Pipeline Co.*, No. 1:21-CV-2098-MHC, 2022 WL 18717801, at \*5 n.7 (N.D. Ga. June 17, 2022) ("[T]he Eleventh Circuit has questioned the existence under Georgia law of an independent common law duty to safeguard and protect ... personal information.") (cleaned up).

the New Jersey duty issue here.  The parties' <u>contract</u> governed the business relationship between Freestyle and Plaintiff, and Plaintiff should not be able to renegotiate that contract by contorting New Jersey tort law to create new duties.[14]

**Insufficient pleaded facts to support gross negligence.**  Plaintiff does not disagree that if the Court dismisses the negligence claim, "gross negligence likewise fails." *Livingstone v. Hugo Boss Store, Atl. City, NJ*, No. CV2101971, 2021 WL 3910149, at *8 (D.N.J. Sept. 1, 2021).  And despite the assertion that its gross negligence claim is "well-plead," Plaintiff sets forth no sufficient supporting *factual* allegations to the claim.  Resp. at 32.  *Powell v. Seton Hall Univ.*, No. 221CV13709WJMJSA, 2022 WL 1224959, at *5 (D.N.J. Apr. 26, 2022) ("It is obvious . . . that merely using phrases such as 'gross negligence' does not mean the factual allegations support such a claim.") (cleaned up).  In *Powell*—which Freestyle cited but Plaintiff declined to address—this Court dismissed a gross negligence claim when the allegations were "nearly identical to those made . . . for simple negligence." *Id.*  Here, Plaintiff's gross negligence claims are even more deficient.  Plaintiff folds gross negligence Count I with the negligence claim, and both rely on all the same allegations.  *See* Compl. ¶¶ 100-108.  Such duplicative facts neither show simple negligence nor do they rise to gross negligence.

For example, Freestyle had no duty to notify Plaintiff's customers, as already explained.  The uncontested facts also show that Freestyle did act "swiftly" after learning it had been compromised.  For example, within 24 hours after being alerted of the issue, Freestyle identified and removed the malware.  MTD, Ex. 1.  Additionally, Plaintiff's failure-to-safeguard argument

---

[14] Further, Plaintiff did not respond to any of the ELD arguments that Freestyle actually made.  *See* MTD at 19.  Plaintiff instead retorts with a rather obvious red herring:  that the ELD does not apply to a fraudulent inducement claim.  Resp. at 35.  Freestyle agrees, and that is the only narrow proposition for which Plaintiff's cited cases stand.  But Freestyle's ELD arguments were targeted *only* on Plaintiff's "claims for negligence/gross negligence and negligence per se."  MTD at 19.  Plaintiff therefore concedes Freestyle's ELD arguments.  Moreover, Plaintiff's legal conclusion makes no difference here because Plaintiff has not stated a sufficient claim for fraud, as explained above.

boils down to one issue: *after the incident* a forensic investigator that Plaintiff hired found a potential PCI compliance issue. Compl. ¶ 73. But it also is undisputed that years before the incident, the subject systems were found "PCI compliant . . . "by an external PCI auditor[,]" and that it "satisfied PCI DSS." Compl., Ex. C at §5.1. And after that time, Freestyle was repeatedly independently validated as PCI compliant both before and *during* the incident by an expert designated and certified by the PCI Security Standards Council. MTD Ex. 2. *Powell* instructs that absent allegations that Freestyle "knew" its auditor was wrong when it certified Freestyle as PCI compliant, Plaintiff's gross negligence allegations must be dismissed.[15]

**F.      Plaintiff fails to state a CFA claim (Count VII)**

<u>First</u>, **insufficient facts alleged to support a non-NJ Plaintiff bringing a CFA claim.**

PulseTV (a non-resident Plaintiff) relies on language in *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 547 (D.N.J. 1998), that New Jersey "intended its Consumer Fraud statute to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and *some aspect* of the transaction took place outside New Jersey." Resp. at 14. (emphasis added). This reasoning is reductive and wrong. Although "some aspect" of the *Boyes* facts took place outside of New Jersey, other sufficient New Jersey contacts existed. *Knox v. Samsung Elecs. Am., Inc.*, No. CIV.A. 08-4308JLL, 2009 WL 1810728, at *4 (D.N.J. June 25, 2009) (interpreting *Boyes*).[16]

The New Jersey choice-of-law provision does not alter the result. First, contractually choosing New Jersey law does not automatically mean that the NJCFA applies to Plaintiff's

---

[15] Plaintiff's citation to *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 683 (D.S.C. 2021) (applying South Carolina law), gets it no mileage. The *In re Blackbaud* defendant only challenged gross negligence based on lack of duty and not "any other basis." *Id.* Here, Freestyle contents that, in addition to no duty, the facts do not rise to the level of gross negligence.

[16] Specifically, "the New Jersey defendant conducted significant parts of the boat sale transaction in New Jersey; the seller met with the buyer in New Jersey, repeated allegedly false claims at a place of business in New Jersey, and the buyer signed the purchase order in New Jersey." *Id.* (distinguishing *Boyes* and refusing to recognize out-of-state plaintiff's NJCFA claim). Thus, *Boyes* was not based solely on the defendant being a New Jersey resident.

- 10 -

specific claim here, especially when insufficient New Jersey connective facts are alleged. *Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447 FLW T, 2015 WL 3403144, at *18 (D.N.J. May 27, 2015), *aff'd*, 653 F. App'x 109 (3d Cir. 2016) ("[C]hoice of law provisions do not, in and of themselves, give New Jersey a more significant interest in the litigation than a plaintiff's home state.").[17]   Here, Plaintiff's complaint fails to allege sufficient facts to establish sufficient New Jersey contacts to apply the NJCFA to Plaintiffs' claim. *Dicuio*, 2015 WL 3403144, at *18 (comparing Illinois and New Jersey consumer protection laws, finding Illinois to have the most significant relationship, and rejecting NJCFA claim for Illinois consumer).   But even if the Court disagrees, the NJCFA claim still fails for any of the reasons below.

**Second, insufficient facts to show Freestyle's services are CFA "merchandise."** Plaintiff contends this Court already held in 2013 that the services at issue constitute NJCFA "merchandise."   Resp. at 15 (citing *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 545 (D.N.J. 2013)).   That case, however, is outdated.   Approximately six years later, the Supreme Court of New Jersey established the test for assessing NJCFA "merchandise" in a business-to-business transaction. *All the Way Towing, LLC v. Bucks Cty. Int'l, Inc.*, 236 N.J. 431 (2019).   Plaintiff concedes this new analysis is the proper test, Resp. at 16, which was not applied in the earlier *Stockroom* decision.   Plaintiff's argument fails under this updated test.

As for the first factor, Plaintiff states it had no "meaningful opportunity to negotiate the terms" of the contract.   Exhibit A to the Complaint disagrees.   It shows that Plaintiff Representative Anisa Ali negotiated, via initialed, handwritten changes, various contractual

---

[17] This is understandable because even when faced with a choice-of-law provision, courts still analyze which forum has the most significant interest to the consumer protection claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (applying Pennsylvania's choice-of-law rules in diversity case, despite the presence of choice-of-law clause selecting Illinois law, and concluding that Illinois law governs interpretation of indemnity clause of a lease agreement).   This is because "a state's territorial limitations apply even when that state's law is selected for application by a choice-of-law provision." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 385 (7th Cir. 2003).

terms, such as price.  *See* Ex. A at ¶¶ 4, 16, 19.  Although the Court "take[s] [Plaintiff's factual]

allegations as true, they must give way to contrary evidence in the . . . Agreement attached to the

complaint."  *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022).  Given

this negotiation, it is implausible that the agreement was "forced upon Plaintiff."

    For the second factor, Plaintiff argues it did not receive any "legal or expert assistance"

and was "cajoled" to purchase Freestyle's services.  But such *facts* are nowhere in the

Complaint, which "may not be amended by the briefs in opposition to a motion to dismiss."

*Frederico*, 507 F.3d at 202.  Moreover, Plaintiff does not contest that both parties are

sophisticated businesses.[18]  Plaintiff's assertion also would have the Court implausibly infer that

during their more than 20-year business relationship Plaintiff was unable to move to another

service provider.  Indeed, in this vein Plaintiff ignores entirely the third factor by not refuting

that it has used Freestyle's SiteLINK toolkit since "March of 2001."  *Id.* ¶ 21.  Further, Plaintiff

cites nothing to support the fourth factor, and a recent decision by this Court explains why it

cannot.  In *Achieve 24 Fitness Ltd. Liab. Co. v. Alloy Pers. Training Sols.*, LLC, No. CV 21-

12085 (GC), 2023 WL 2264129 (D.N.J. Feb. 28, 2023), this Court found that "no allegations

exist in the FAC to suggest that Alloy sells the components of the System to the public at large,

either directly or indirectly.  Rather, it appears that Alloy only offers the System to a discrete and

specialized portion of the public—gym owners."  *Id.* at *10.  The Complaint here likewise states

that Freestyle's services similarly are used by a discrete and specialized portion of the public,

"interactive online stores," and not used by the public at large on any scale.  Comp. ¶ 2.  In short,

the allegations suggest that no NJCFA merchandise is at issue.  The lack of plausible CFA facts

---

[18]And Plaintiff cites nothing to show it could not have obtained legal advice had it wanted to do so.

supports dismissal.[19]

**Third**, insufficient facts to show an "unlawful practice" for three reasons.[20]

   **(a)    CFA "affirmative act" not pleaded with Rule 9(b) particularity.**

Plaintiff does not dispute that its "affirmative act" claim must be pleaded with particularity under

Rule 9(b).  *See Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *8 (D.N.J. Apr.

7, 2011); *Rait v. Sears, Roebuck and Co.*, No. 08–2461, 2009 WL 250309, at *4 (D.N.J. Feb. 3,

2009).  Rather, Plaintiff wrongly complains that Freestyle did not identify how the allegations

were insufficient.  However, Freestyle incorporated "all the reasons stated in Section D (Count

VI)," MTD at 22-23, which is nearly three-and-a-half pages of argument.[21]

   **(b)    Breach of purported contractual duty is not CFA "unlawful."**

Plaintiffs do not meaningfully refute that (1) "failing to adhere to data security standards" and

"failing to safeguard card information" is not, as a matter of law, an unlawful CFA practice, or

that (2) the Supreme Court of New Jersey instructs that the CFA is not meant to provide a

remedy for mere breaches of duty in commercial contracts.  *See D'Agostino v. Maldonado*, 216

N.J. 168, 189 (2013).  Nor does Plaintiff claim that Freestyle violated any CFA-promulgated

regulations.  *See* N.J.S.A. § 56:8-2.  Further, Plaintiff agrees that when a CFA claim is based on

a breach of contract, a plaintiff must allege a "substantial aggravating circumstance."[22]

---

[19] *GMFS LLC v. Cenlar FSB*, No. CV 18-00582-BAJ-RLB, 2020 WL 9602039, at *5 (M.D. La. June 4, 2020) ("Satisfying the definition of 'merchandise' is critical to stating a valid claim under the CFA, and . . . [the] Complaint is entirely silent on this issue.  As such, Plaintiff fails to adequately state a claim under the CFA.").

[20] Freestyle does not contend, as Plaintiff wrongly asserts, that Plaintiff "was required to categorize the unlawful practices."  *See* Resp. at 18.  Freestyle's point was that Plaintiff's shotgun-style references to nearly its whole Complaint made it difficult apply appropriate legal analysis and pleading standard for each category. Regardless, Freestyle categorized Plaintiff's allegations for the 12(b)(6) analysis.  Plaintiff does not challenge those categorizations, nor does it persuasively argue the CFA claims should proceed as pleaded, as explained below.

[21] Freestyle also stated that "[t]he statements Plaintiff identifies from 2014 are insufficient because they were made far before Plaintiff alleges that Freestyle's services became non-PCI-compliant, as well as conflict with Ex. D to Plaintiff's Complaint."  MTD at 23.

[22] Plaintiff offers two such circumstances to no avail.  First, Plaintiff confusingly claims Freestyle "used its right to unilaterally revise the underlying contract . . . as a ploy to avoid liability."  Resp. at 20.  But Plaintiff identifies nothing that was changed mid-contract, and certainly nothing that was changed about PCI compliance,

### (c)    Insufficient and implausible facts for CFA concealment claim.

Plaintiff does not dispute that a CFA concealment claim must be based on a disclosure duty for

the allegedly concealed facts.  *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 426 (App.

Div. 2003).  But Plaintiff cannot identify any such disclosure duty, as "courts interpreting fraud

claims . . . under the NJCFA . . . have not recognized such a duty" . . . "to disclose based merely

on superior knowledge in an arm's-length transaction."  *In re Subaru Battery Drain Prod. Liab.*

*Litig.*, No. 1:20-CV-03095-JHR-JS, 2021 WL 1207791, at *25 (D.N.J. Mar. 31, 2021)

(dismissing NJCFA claim).  Further, no plausible facts to support that Freestyle had the requisite

knowledge of its alleged PCI noncompliance as noted in the above fraud argument.[23]  Contrary

to the contention about not prejudging the "strength" of a properly pleaded claim, Plaintiff's

claim is insufficiently pleaded in the first place, which is properly dismissed under Rule 12(b)(6),

and which courts regularly do.  *E.g.*, *In re Subaru Battery Drain Prod. Liab. Litig.*, at 2021 WL

1207791, at *25.

### G.    Punitive damages cannot be an independent "claim" and are otherwise waived

Plaintiff admits as "technically correct" Freestyle's argument that there is no independent

cause of action for punitive damages.  Resp. at 36.  However, it contends this is not a problem

because the *remedy* of punitive damages theoretically may remain if any of Plaintiff's "several"

claims that can support such damages survives.  But all such claims should be dismissed (as

---

which it concedes never was mentioned in the contracts.  Second, Plaintiff relies on allegedly false promises about
delivering sufficient data security.  This, even if true, is not an aggravative circumstance.  *E.g.*, *Lockhart v.
Dorrance Publ'g Co., Inc.*, No. CV 22-02929(FLW), 2023 WL 157323, at *7 (D.N.J. Jan. 11, 2023) (noting that a
failure to fulfill a promise may constitute a breach of contract, but it is not fraud, and the nonperformance of that
promise does not make it so).  Fatally, nor has Plaintiff plausibly alleged any facts suggesting that Freestyle entered
into the contract with the express intent of defrauding Plaintiff or that it never intended to fulfill its obligations under
its terms.  *Id.* (dismissing NJCFA claim and noting that the "allegedly unlawful practice post-dates the date of the
parties' agreement," which is similar to the facts here given the potential PCI compliance issues arose later).

[23] *See also Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-CV-02129-MSK-NYW, 2016 WL
8578096, at *11 (D. Colo. June 20, 2016) (knowledge not established under Colorado law in data breach case when
"there is no allegation that an on-site assessment by Defendants revealed that they were not compliant with the [PCI]
standards" or that they knew of such non-compliance "but failed to correct it.").  Plaintiff failed to address this case.

Freestyle has explained above), and a derivative punitive damages remedy fails.  But even if any such claim survives, punitive damages still are unavailable because Plaintiff waived them.  *See* Plaintiff's Ex. B, MOM SLA § 7.2.[24]  "[A] party can voluntarily waive its rights to punitive damages."  *Johnson v. Wynn's Extended Care, Inc.*, No. CIV. 12-CV-00079-RMB-KMW, 2014 WL 5292318, at *6 (D.N.J. Oct. 15, 2014), *rev'd in part on other grounds*, 635 F. App'x 59 (3d Cir. 2015).  Despite the assertion otherwise, remedies can be dismissed if they are unavailable.[25]  This distinguishes Plaintiff's citation to *Jones v. Francis*, No. CIV.A. 13-04562 SRC, 2013 WL 5603848, at *2 (D.N.J. Oct. 11, 2013), which found dismissing a punitive damages request would be premature because the analysis turned on "evidentiary inquir[ies]" and not whether such damages were available.[26]

      For the reasons above, the Court should dismiss the Complaint.[27]

      This 3rd day of April, 2023               /s/ Torsten Kracht_____

                                              Torsten Kracht

---

[24] It also is unclear why Plaintiffs cited *Wildstein v. Tru Motors, Inc.*, 227 N.J. Super. 331, 335, 547 A.2d 340, 342 (Law. Div. 1988), *see* Resp. at 36, as it merely held that the NJCFA did not preempt the common law remedies for legal fraud, which is not an issue here.  And whether a substantive claim may permit punitive damages and whether such damages have been waived are not the same thing.

[25] *Cf. Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 848 (3d Cir. 1995) (dismissal appropriate for unavailable remedy); *Bhatt v. Comm'r of NJDOL*, No. 3:16-CV-5654-BRM-DEA, 2018 WL 623667, at *9 (D.N.J. Jan. 30, 2018) (same).

[26] Even if not dismissed, Plaintiff's punitive damages evidence will be difficult.  *See* MTD at 39-40.

[27] Plaintiff claims the Complaint "should proceed in its current incarnation" even though it purported to withdraw half its case. Resp. at 37.  Should the Court dismiss any of the remaining six claims, Plaintiff asks to replead.  But futility precludes repleading "if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988).  For all the reasons in Freestyle's motion, repleading the withdrawn claims would be futile because they would not state claims under any plausible facts here and should be dismissed with prejudice.  For the other claims, Plaintiff does not explain why leave should be granted, and Plaintiff's failure to meaningfully respond to many of Freestyle's arguments supports futility.  *See Smith v. Covidien LP*, No. 119CV11981NLHAMD, 2019 WL 7374793, at *11 n.7 (D.N.J. Dec. 31, 2019) (futility found for negligence, breach of implied warranty, and stand-alone claim for punitive damages).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2023, I filed a true and correct copy of the foregoing

**DEFENDANT FREESTYLE SOFTWARE, INC.'S REPLY IN SUPPORT OF MOTION TO**

**DISMISS** via the Court's electronic-filing system, which will send electronic notification of such

filing to all counsel of record in this action.

/s/ Torsten Kracht
Torsten Kracht
